# STATE OF CONNECTICUT *v.* BARBARA WILSON
## (AC 21401)

Dranginis, Bishop and Hennessy, Js.

Argued March 28—officially released July 16, 2002

*Marsha Jeanne Lawson*, certified legal intern, with whom were *Timothy H. Everett* and, on the brief, *Todd D. Fernow*, and *Daniel Marshall*, *Eugenie Warner* and *Peter Goldstone*, certified legal interns, for the appellant (defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Catherine Brannelly Austin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Barbara Wilson, appeals from the judgment of conviction, rendered after a jury trial, of breach of the peace in violation of General Statutes § 53a-181,[1] assault in the second degree in violation of General Statutes § 53a-60 (a) (3) and reckless endangerment in the second degree in violation of General Statutes § 53a-64 (a) as a lesser included offense of reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a). On appeal, the defendant claims that (1) the jury improperly convicted her

---

[1] General Statutes § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or his property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which he is not licensed or privileged to do . . . ."

of breach of the peace on a theory of culpability with which she was not charged and (2) the court prejudiced her case when it improperly instructed the jury that "[t]he state is as much concerned in having an innocent person acquitted as in having a guilty person convicted." We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 2 a.m. on May 16, 1998, the defendant had an argument with Thomas Hickson in the parking lot of a nightclub. The argument continued in a crowded diner that was nearby. Louis Nogueria and several of his friends were among the diner patrons. The defendant screamed and shouted at Hickson, using vulgar language, and pursued him through the diner causing tables and chairs to be overturned and bumped into patrons. The defendant then picked up a heavy glass sugar dispenser and threw it at Hickson. The dispenser missed Hickson and struck Nogueria. Nogueria incurred a deep laceration in his cheekbone, briefly lost consciousness and was brought by ambulance to a hospital, where a plastic surgeon repaired the damage to his face.

Thereafter, the defendant was charged in count one of a multicount information with breach of the peace in violation of § 53a-181 (a) (1) "in that on or about May 16, 1998 at or near 998 Wolcott Road, Waterbury, Connecticut, the said Barbara Wilson *with the intent to cause inconvenience, annoyance or alarm or recklessly creating a risk thereof, engaged in fighting or in violent tumultuous or threatening behavior in a public place.*"[2] (Emphasis added.) Additional facts will be set forth as necessary.

I

On appeal, the defendant claims that the court improperly submitted for the jury's consideration six

---

[2] The remaining counts in the multicount information are not at issue in this appeal.

uncharged theories of breach of the peace, at least three of which were supported by evidence sufficient to make it reasonably possible that the jury convicted her of breach of the peace on a theory of culpability not included in the information.[3] Specifically, she argues that she is entitled to a reversal of the judgment of conviction as to breach of the peace because a reasonable possibility exists that the jury found her guilty of that offense based on a theory of culpability with which she was not charged. She claims that the court, by reading all seven subdivisions of the breach of the peace statute as part of its jury charge when the state's long form information charged her with a violation of only § 53a-181 (a) (1),[4] deprived her of her right to be informed of the nature and cause of the accusation against her as guaranteed by the sixth and fourteenth amendments to the United States constitution, and by article first, § 8, of the constitution of Connecticut.[5]

[3] Specifically, the defendant claims that there was evidence presented at trial supporting the uncharged theories of culpability for breach of the peace in subdivision (2) of General Statutes § 53a-181 (a) ("assaults or strikes another"); in subdivision (5) ("in a public place, uses abusive or obscene language or makes an obscene gesture"); and in subdivision (6) ("creates a public and hazardous or physically offensive condition by any act which he is not licensed or privileged to do"). The defendant claims that it is reasonably possible that the court's instruction misled the jury to convict her on the basis of evidence that supported those theories of culpability.

[4] General Statutes § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place . . . ."

[5] The defendant invokes both the United States constitution and the constitution of the state of Connecticut in support of her claims. She has not, however, provided any independent analysis of the state constitutional claims, and, therefore, we decline to review them. See *State* v. *Davis*, 51 Conn. App. 171, 176 n.10, 721 A.2d 146 (1998).

The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against

The following additional facts are relevant to our resolution of that issue. After reading all seven subdivisions of the breach of the peace statute in its jury charge, the court then explained to the jury that it had read the entire statute and that the state "must first prove that the defendant acted with the intent to cause inconvenience, annoyance and alarm. . . . Such acts or conduct must occur in a public place . . . [and] must cause inconvenience, annoyance or alarm, a risk thereof among members of the public . . . [and] the state must prove beyond a reasonable doubt . . . that the defendant engaged in fighting or in violent, tumultuous or threatening behavior . . . . " At the conclusion of the court's charge and outside the presence of the jury, the defendant's attorney excepted to the court's reading of the entire statute, stating that the court had included uncharged theories of culpability. The court refused to change its instruction in regard to the provisions of the breach of the peace statute, stating that the definition of breach of the peace that was read to the jury was directly from the statute and that "it [was] appropriate."

On appeal, the defendant argues that the court should have submitted the case to the jury with instructions restricting its deliberations solely to the theory of criminal culpability actually alleged in the charging document, and that to read the entire statute to the jury was a constitutional error requiring reversal of the judgment of conviction.

She further argues that Connecticut courts have consistently held that a trial court commits constitutional error when it instructs a jury on an uncharged theory of culpability. The defendant relies on our Supreme

him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

Court's language in *State* v. *Chapman*, 229 Conn. 529, 643 A.2d 1213 (1994) (en banc), wherein the court reiterated that "[t]he sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and . . . to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . . *State* v. *Scognamiglio*, 202 Conn. 18, 22, 519 A.2d 607 (1987)." (Internal quotation marks omitted.) *State* v. *Chapman*, supra, 537–38.

"A defendant is constitutionally entitled to be informed of the nature and cause of the accusation against him. Conn. Const., art. I, § 8; U.S. Const., amend VI. Nothing is more elementary in criminal law than that an accused is required to defend only against the charge alleged. *State* v. *Genova*, 141 Conn. 565, 572, 107 A.2d 837 [1954] (opinion of *O'Sullivan, J.*, dissenting)." (Internal quotation marks omitted.) *State* v. *Newton*, 8 Conn. App. 528, 532, 513 A.2d 1261 (1986). "[F]or the defendant to establish an infringement of these constitutional rights, he must demonstrate that the court's charge caused him unfair surprise or prejudiced the preparation of his defense." *State* v. *Franko*, 199 Conn. 481, 490, 508 A.2d 22 (1986). We conclude, as the *Franko* court did, that "the record does not support the defendant's claim that he was surprised by the disputed instruction or that this instruction prejudiced his defense in any way." Id.

The defendant was aware that she was charged with the offense of breach of the peace, and the long form information clearly informed her as to the subdivision of § 53a-181 (a) that the state claimed she had violated. She had sufficient notice of the theory of culpability set forth by the state, and there is nothing in the record

to indicate that she would have altered her defense in any way had she known prior to trial that the court was going to read the entire breach of the peace statute in its jury charge.

The defendant did not defend against the breach of the peace charge in any manner implicating her right to notice or to prepare a defense. There was little or no attention paid to casting doubt on the violation of the breach of the peace statute, as the evidence in the record clearly demonstrated that the defendant had engaged in threatening behavior in a public place.[6] Rather, the defense case-in-chief concentrated on addressing the other counts in the multicount information. The focus of the defense was to cast doubt that the injury was serious, that the sugar container was a dangerous instrument and that the evidence proved beyond a reasonable doubt that the defendant had intended to cause serious physical injury.

Initially, we set forth the standard of review. In our examination of whether the jury was misled, the "charge to the jury will not be critically dissected for the purpose of discovering possible inaccuracies of statements, but the charge is to be considered, rather, as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . To determine whether an error in a charge constitutes reversible error, the court must consider the whole charge." (Citation omitted; internal quotation marks omitted.) *State* v. *Belton*, 190 Conn. 496, 502, 461 A.2d 973 (1983). "We have disapproved the practice of reading an entire statute to a jury where under the pleadings or the evidence only a portion of it is applicable. . . . While the court may instruct in the exact language of the statute, it

---

[6] In a written statement to the police, the defendant stated that Hickson had punched her, and that she chased him into a diner and threw a sugar shaker at him.

should not do so where the exact statutory language might mislead the jury . . . . The test we must apply, therefore, is whether it is reasonably possible that the jury [was] misled." (Citations omitted; internal quotation marks omitted.) Id., 501–502. Thus, on appeal we must determine whether the jury instructions possibly misled the jury.

We are convinced that the reading of the entire breach of the peace statute, including parts that obviously had no connection with the charges in the case at hand, did not mislead the jury. A careful reading of the record shows that the instruction to the jury focused on the charge as set forth in the information and as contained in subdivision (1) of § 53a-181 (a). The court, during its charge, informed the jury that it had read the entire statute and then proceeded to instruct the jury as to the elements of subdivision (1), which are stated in the information. In its instructions as to the essential elements that the jury would have to find to convict the defendant of the offense as charged, the court made no reference to subdivisions of § 53a-181 (a) other than the one contained in the information. See *State* v. *Carter*, 189 Conn. 611, 628–31, 458 A.2d 369 (1983).

Additionally, the jurors had the charged subdivision read to them during jury selection and at the commencement of trial, and had with them in the deliberations room the information, which referred to subdivision (1) of the breach of the peace statute. Accordingly, there is no reasonable possibility, given the circumstances here, that in returning its verdict the jury was misled by the court's reading of the entire statute.

II

The defendant next claims that it is reasonably possible that the court misled the jury about the presumption of innocence when it instructed that "[t]he state is as much concerned in having an innocent person acquitted

as in having a guilty person convicted." Specifically, the defendant argues that the contested language could have misled the jury to believe that the court was suggesting that the assistant state's attorney would not have ardently pressed for conviction unless she truly believed that the defendant was guilty and not an innocent person entitled to acquittal. The result, the defendant claims, is that "this sort of an instruction is essentially putting the court's imprimatur on the state's case . . . ."

Connecticut courts have found that wording very similar to the statement under attack in this case does not violate a defendant's constitutional rights and, thus, does not require reversal of a judgment of conviction.

Initially, we reiterate our standard of review. "It is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State v. Austin*, 244 Conn. 226, 235, 710 A.2d 732 (1998).

In support of her position, the defendant cites *State v. Schiappa*, 248 Conn. 132, 168, 728 A.2d 466 (en banc), cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999), wherein our Supreme Court stated that "pursuant to our supervisory authority over the administration of justice, [we] direct our trial courts to refrain from using the challenged language in future cases . . . ." The defendant in *Schiappa* had claimed that the trial court improperly instructed the jury on reasonable

doubt in violation of her fifth amendment right to due process and sixth amendment right to a jury trial. Id., 167–68. Specifically, she argued "that the trial court's charge to the jury that the principle requiring the state to establish guilt beyond a reasonable doubt is a 'rule of law . . . made to protect the innocent and not the guilty' [that] impermissibly undermined the presumption of innocence, thereby diluting the state's burden of proof." Id., 168. Although the Supreme Court in *Schiappa* noted its disapproval of the challenged language; id.; it nevertheless found that "the charge, considered as a whole, presents the case to the jury so that no injustice will result"; (internal quotation marks omitted) id., 171; and rejected the defendant's constitutional claim. As was the case in *Schiappa*, the defendant in the present case has not proven a constitutional violation.

In the case at hand, the court did not use the language found in *Schiappa* but instructed the jury as follows: "The state is as much concerned in having an innocent person acquitted as in having a guilty person convicted." The defendant claims that the challenged jury instruction suggested that the state would not have pursued the prosecution unless it had a good faith basis for believing that the person charged was guilty, thereby diluting the state's burden of proof in that the instruction may result in the "possibility that a juror . . . might be given to understand from it that only innocent persons should be acquitted . . . ." *State* v. *Francis*, 228 Conn. 118, 136 n.19, 635 A.2d 762 (1993).

In *State* v. *Allen*, 28 Conn. App. 81, 611 A.2d 886, cert. denied, 223 Conn. 920, 614 A.2d 826 (1992), we rejected a challenge to a similar instruction that included the phrase: "The state does not desire the conviction of innocent people or of any person whose guilt upon the evidence is in the realm of reasonable doubt." (Internal quotation marks omitted.) Id., 84. We stated in that case that the trial court did not instruct that the state

prosecutes only guilty people, but rather that the state requires the conviction of only the guilty. Id., 85.

As we did in *Allen*, we conclude in this case, after reviewing the charge as a whole, that the court thoroughly informed the jury of the defendant's presumed innocence and that the state bore the burden of proving the defendant's guilt beyond a reasonable doubt.

Although the language challenged here is not the same as that challenged in *Allen* or *Schiappa*, the rationale of those cases can be applied here. In this case, the court instructed the jury that "at the moment when [the defendant] was presented before you for trial, she stood before you free of any bias, prejudice or burden arising from her position as the accused. That nothing you might know or guess about her past should be considered by you at all. Insofar as you are concerned, she was then innocent and she remains innocent until such time as the evidence and matters produced here, right here in this courtroom, and in the course of this trial satisfy you that she is guilty.

"I remind you that the piece of paper containing the charge, the information, is not evidence. But it is merely the formal manner of accusing a person of a crime. You must not consider it as any evidence of guilt or draw any inference of guilt from the fact that the accused has been arrested and charged. . . . The burden then is on the state to prove the accused guilty of the crimes with which she is charged, and she, the accused, does not have to prove her innocence."

Furthermore, the court, in clear and legally correct terms repeatedly instructed the jury regarding the presumption of innocence and the state's burden of establishing guilt beyond a reasonable doubt. We note, however, that the challenged language in this case, viewed in isolation, possibly is susceptible of an unacceptable interpretation. Because of that we suggest, in

keeping with our Supreme Court's direction in *Schiappa*, that this specific language be omitted from all jury instructions in the future. We are convinced, however, after our thorough review of the jury instructions, that the court adequately informed the jury that it could draw no inference of the defendant's guilt from the fact that she had been arrested and charged, and that the state had to prove beyond a reasonable doubt that the defendant committed the offenses with which she was charged. We conclude that there is no reasonable possibility that the jury could have been misled by the instruction given by the court.

The judgment is affirmed.

In this opinion the other judges concurred.