# STATE OF CONNECTICUT *v.* ANTHONY MARSHALL
## (AC 23708)

Lavery, C. J., and Foti and Flynn, Js.

Argued March 31—officially released June 22, 2004

*Daniel J. Krisch*, special public defender, with whom were *Elizabeth M. Festa*, legal intern, and, on the brief, *Michael S. Taylor*, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph T. Corradino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Anthony Marshall, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a, and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). On appeal, the defendant claims that the court improperly (1) denied his motion to suppress his written confession because the circumstances under which he gave the statement demonstrated that he did not knowingly, intelligently and voluntarily waive his constitutional right against self-incrimination, and (2) instructed the jury in a manner such that the instruction violated his constitutional right to a fair trial by an impartial jury when the court directed the jury to consider the state's good faith basis for prosecuting him. We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The defendant and the victim, Demetrius Brown, were involved in drug trafficking activity in Bridgeport in 1996. Both men sold drugs for the Q & A gang, which was headed by Aaron Harris and Quinne Powell. The defendant and Brown also knew each other socially.

On November 18, 1996, Brown was riding his bicycle on Bunnell Street in Bridgeport and talking with friends.

He had been drinking for most of the day and was intoxicated by the evening. He was armed with a .357 revolver. While Brown was riding his bicycle, the defendant approached him, also on a bicycle, and shot Brown, striking the side of his face. The two had a heated exchange, in which the defendant shouted at Brown to "shut . . . up you snitch." The defendant then shot Brown two more times, in the lower back and the shoulder.

The defendant was brought to the Bridgeport police station on August 2, 2000, for questioning as part of a joint investigation by the Federal Bureau of Investigation (FBI) and the Bridgeport police department into drug trafficking in Bridgeport. At the time, the defendant was incarcerated on other charges. Detective Dwayne McBride of the Bridgeport police department served the defendant with an arrest warrant for attempt to commit murder and assault. The defendant was then taken to the Bridgeport office of the FBI for questioning. At 12:26 p.m., McBride, accompanied by special agent Patrick Ryan of the FBI, advised the defendant of his rights under *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), at the FBI office. The defendant then signed a waiver of rights form in the presence of McBride and Ryan.

After completing the waiver form, the defendant was questioned by McBride and his partner, Detective Santiago Llanos, and Ryan. The defendant was questioned about the assault on Brown, gang activity in Bridgeport and his involvement with the Q & A gang. The defendant neither requested an attorney nor asked that the questioning cease at any time during the interrogation. The defendant was also given something to eat and drink before being transported back to the Bridgeport police station.

At that point, McBride asked the defendant if he would like to make a written statement. Between 5:35

p.m. and 7:20 p.m., the defendant transcribed a seven page statement concerning the assault on Brown. In his statement, the defendant claimed that he had shot Brown in self-defense when he saw Brown reach for his revolver. The defendant, however, admitted that he was resentful toward Brown because of an altercation he had with Brown at a party. The defendant also stated that Harris was upset with Brown because Brown had cooperated with the police by detailing his involvement with drug trafficking, the Q & A gang and Harris in order to avoid an extensive prison sentence after being arrested on drug charges on November 15, 1996. Consequently, Harris told the defendant to "get" Brown when he next encountered him. After Brown had served his sentence, he returned to his Bridgeport neighborhood. Brown was told by one of Harris' associates that he was no longer welcome in the neighborhood because he had "snitched" to the police.

Prior to trial, on September 6, 2000, the defendant filed a motion to suppress his written statement, arguing that he did not intelligently, voluntarily and knowingly waive his right against self-incrimination. The court denied the motion. Subsequently, the defendant renewed his motion to suppress at trial, maintaining that the five hour period between the time he was arrested and the time he finally gave his written statement, as well as the changes in location, defeated his free will as to his waiver of his rights. A hearing on the defendant's motion to suppress was held on May 7, 2002.

In an oral decision, the court denied the defendant's motion, stating that "the whole procedure was proper, and by a preponderance of the evidence I could certainly find that the statement was given voluntarily and intelligently, and [that] he had a clear ability to understand what he, in fact, was doing and what his rights were . . . ." The court noted that the defendant was given proper *Miranda* warnings and voluntarily signed

the waiver form. The court stated that the defendant never requested an attorney or that the interrogation stop. Moreover, the court found that the defendant's written statement suggested that he was sufficiently intelligent to comprehend what was occurring and to understand his rights.

After a jury trial, the defendant was convicted of attempt to commit murder and carrying a pistol without a permit and acquitted of assault in the first degree. The court sentenced the defendant to twenty years incarceration, execution suspended after twelve years, with five years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion to suppress the written statement he made to the authorities because the circumstances under which he gave the statement demonstrate that he did not knowingly, intelligently and voluntarily waive his constitutional right against self-incrimination. Specifically, the defendant maintains that the five hour time lapse between being advised of his *Miranda* rights and giving his statement, the change in location between the Bridgeport police station and the FBI office and the changes in the interrogating authority, when taken together, show that his waiver was not knowing, intelligent and voluntary.

We first set forth the standard of review and legal principles that guide our analysis. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . ." (Internal quotation marks omitted.) *State* v. *Bjorklund*, 79 Conn. App. 535, 548, 830

A.2d 1141 (2003), cert. denied, 268 Conn. 920, 846 A.2d 882 (2004).

"The issue of waiver is factual, but our usual deference to the finding of the trial court on questions of this nature is qualified by the necessity for a scrupulous examination of the record to ascertain whether such a finding is supported by substantial evidence." (Internal quotation marks omitted.) *State* v. *Jacques*, 53 Conn. App. 507, 514, 733 A.2d 242 (1999). "Factors which may be considered by the trial court in determining whether an individual had the capacity to understand the warnings include the defendant's experience with the police and familiarity with the warnings . . . his level of intelligence, including his IQ . . . his age . . . his level of education . . . his vocabulary and ability to read and write in the language in which the warnings were given . . . intoxication . . . his emotional state . . . and the existence of any mental disease, disorder or retardation." (Internal quotation marks omitted.) *State* v. *Wright*, 76 Conn. App. 91, 100, 818 A.2d 824 (2003), cert. denied, 267 Conn. 911, 840 A.2d 1175 (2004).

"The state has the burden of proving by a preponderance of the evidence that the defendant knowingly and intelligently waived his *Miranda* rights . . . . [T]he state must demonstrate: (1) that the defendant *understood* his rights, and (2) that the defendant's *course of conduct* indicated that he did, in fact, waive those rights." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Santiago*, 245 Conn. 301, 320, 715 A.2d 1 (1998). "In considering the validity of this waiver, we look, as did the trial court, to the totality of the circumstances of the claimed waiver." (Internal quotation marks omitted.) *State* v. *Hafford*, 252 Conn. 274, 296, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000).

In this case, the totality of the circumstances surrounding the defendant's waiver of his *Miranda* rights

indicates that he both understood his rights and waived them. The defendant signed each page of the waiver portion of the rights form in the presence of McBride and Ryan prior to giving a statement. McBride reviewed the form with the defendant to ensure that he could both read and comprehend the form. Ryan testified that the defendant did not appear to have any difficulty understanding the directions given to him. Both men testified that the defendant never requested counsel, never indicated that he did not want to speak with them and never asked for the interrogation to stop.          ·

Moreover, Ryan testified that the defendant was incarcerated on an unrelated charge at the time he was arrested in connection with the assault on Brown. That would suggest that the defendant was familiar with the criminal justice system and the process of waiving his rights. See *State* v. *Wright*, supra, 76 Conn. App. 100. McBride and Ryan testified that they did not make any threatening statements to the defendant, nor did they suggest what information the defendant should include in his statement. McBride testified that neither he nor Ryan promised to speak to federal or state authorities on behalf of the defendant regarding his pending case or a possible sentence if he gave a statement.

The three factors emphasized by the defendant, even when considered together, do not demonstrate that his waiver was not voluntary, knowing and intelligent. The defendant cites several cases from other jurisdictions that discuss the effect on the validity of a waiver of a time lapse, changes in location and a change in the interrogating authority.[1] He maintains that those cases

[1] Our Supreme Court considered the question of whether a criminal defendant must be readvised of his *Miranda* rights in *State* v. *Burge*, 195 Conn. 232, 247, 487 A.2d 532 (1985). This case is distinguishable from the present case in that the defendant in *Burge* was not in custody when he was advised of his *Miranda* rights on his arrival at the Darien police station between 4:15 p.m. and 4:30 p.m. Id., 246. The defendant's status changed after he visited the scene of the crime with the police, and he was reread his rights in part when he returned to police headquarters before 7 p.m. Id., 246–47.

support his argument that circumstances like those in this case can "engender confusion in the mind of a defendant as to the nature, duration and applicability of his *Miranda* rights." We are not persuaded.

The defendant first maintains that the five hour time period between which he was advised of his *Miranda* rights and ultimately gave his written statement, in combination with the change in interrogating authority and location, "raise[s] serious doubts whether [his] waiver was knowing, intelligent and voluntary *at the time he gave the written statement . . . .*" (Emphasis in original.) The circumstances surrounding his waiver and subsequent statement do not support such a conclusion.

Connecticut courts have considered the effect of a lengthy interrogation on the voluntariness of a confession within the context of precustodial interrogations, a scenario distinct from the present case. Nevertheless, the courts in those cases have held that "[t]he mere fact that admissions are made by an accused after a long period of interrogation by a police officer does not necessarily mean those admissions are involuntary." (Internal quotation marks omitted.) *State* v. *Lapointe,* 237 Conn. 694, 734, 678 A.2d 942 (approximately nine hours), cert. denied, 519 U.S. 994, 117 S. Ct. 484, 136 L. Ed. 2d 378 (1996); see also *State* v. *DeAngelis,* 200 Conn. 224, 235, 511 A.2d 310 (1986) (ten and one-half hours); *State* v. *Burge,* 195 Conn. 232, 247, 487 A.2d 532

---

On appeal, the defendant claimed that he was not advised of his *Miranda* rights, contending that "the *Miranda* warnings which he received in the late afternoon were inadequate to validate the confessions which he gave in the early evening . . . ." Id., 247. Our Supreme Court disagreed, holding that "the initial warnings performed their constitutionally mandated function even though they were issued prior to the time the defendant was in custody or had become a suspect." Id., 249. The court took into account that the defendant was constantly in the company of the police, was questioned on the same subject matter by the same officers and confessed within four hours of being apprised of his *Miranda* rights. Id.

(1985) (four hours); *State* v. *Wright,* supra, 76 Conn. App. 107 (twelve hours).

Other jurisdictions, however, have had occasion to consider the circumstances surrounding the type of waiver at issue in this appeal. "The courts have generally rejected a *per se* rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners." (Emphasis in original.) *United States* v. *Andaverde,* 64 F.3d 1305, 1312 (9th Cir. 1995), cert. denied, 516 U.S. 1164, 116 S. Ct. 1055, 134 L. Ed. 2d 199 (1996); see also *Wyrick* v. *Fields,* 459 U.S. 42, 49, 103 S. Ct. 394, 74 L. Ed. 2d 214 (1982) (reversing federal appeals court's creation of *per se* rule that *Miranda* warnings must be repeated after suspect takes polygraph examination and stating that courts should consider totality of circumstances). Courts have held that the mere passage of time between when a defendant is advised of his *Miranda* rights and when he gives a statement does not necessarily render the confession involuntary, even if the defendant is not readvised of his rights prior to giving a statement. See, e.g., *United States* v. *Banner,* 356 F.3d 478, 480–81 (2d Cir. 2004) (five hours); *United States* v. *Andaverde,* supra, 1313 (one day); *Martin* v. *Wainwright,* 770 F.2d 918, 930–31 (11th Cir. 1985) (one week), cert. denied, 479 U.S. 909, 107 S. Ct. 307, 93 L. Ed. 2d 281 (1986); *Stumes* v. *Solem,* 752 F.2d 317, 320 (8th Cir.) (five hours), cert. denied, 471 U.S. 1067, 105 S. Ct. 2145, 85 L. Ed. 2d 502 (1985); *United States ex rel. Henne* v. *Fike,* 563 F.2d 809, 814 (7th Cir. 1977) (nine hours), cert. denied, 434 U.S. 1072, 98 S. Ct. 1257, 55 L. Ed. 2d 776 (1978); *Biddy* v. *Diamond,* 516 F.2d 118, 122 (5th Cir. 1975) (twelve days), cert. denied, 425 U.S. 950, 96 S. Ct. 1724, 48 L. Ed. 2d 194 (1976). "[T]here is no requirement that an accused be continually reminded of his rights once he has intelligently waived them . . . ." (Citation omitted.) *United States* v. *Anthony,* 474 F.2d 770, 773 (5th Cir. 1973);

see also *Jarrell* v. *Balkcom*, 735 F.2d 1242, 1254 (11th Cir. 1984), cert. denied, 471 U.S. 1103, 105 S. Ct. 2331, 85 L. Ed. 2d 848 (1985).

In this case, the five hour period between the time at which the defendant was advised of his *Miranda* rights and the time he began giving his statement does not necessarily lead to the conclusion that new warnings were required. The initial *Miranda* warnings given to the defendant were adequate, rendering new warnings unnecessary. McBride reviewed the defendant's rights with him to ensure that he understood them and, subsequently, the defendant signed the waiver form, effectively waiving his rights. The defendant did not ask any questions regarding his constitutional rights during the course of the interview, nor did he seem to have any difficulty in understanding instructions. Moreover, the fact that the defendant was incarcerated at the time of his arrest suggests that he was familiar with the criminal justice system and the process of waiving one's rights.

The defendant next argues that there was a change in the interrogating authority. The record clearly contradicts that assertion. McBride and Ryan testified that they, along with Llanos, questioned the defendant for the duration of the defendant's interrogation. There was only a short period of time in which the defendant, at his request, spoke in private with McBride. Additionally, the defendant was advised of his rights by McBride and Ryan, and both men were present when the defendant waived his rights and later transcribed his statement. Additionally, even if there was a change in authority in this case, courts have held that this factor, even when combined with a time lapse and no readvisement of one's rights, is insufficient to render a confession involuntary. See, e.g., *United States* v. *Banner*, supra, 356 F.3d 480–81; *United States* v. *Baron*, 94 F.3d 1312, 1320 (9th Cir.), cert. denied, 519 U.S. 1047, 117 S. Ct. 624,

136 L. Ed. 2d 546 (1996); *United States* v. *Hopkins*, 433 F.2d 1041, 1045 (5th Cir. 1970), cert. denied, 401 U.S. 1013, 91 S. Ct. 1252, 28 L. Ed. 2d 550 (1971); *United States* v. *Smith*, 679 F. Sup. 410, 412–13 (D. Del. 1988).

Last, the defendant cites the change in location between the Bridgeport police station and the Bridgeport office of the FBI in contending that his waiver was not voluntary. Courts, however, have held that a change in location, when considered within the totality of the circumstances, does not invalidate a voluntary waiver and ensuing confession. See, e.g., *United States* v. *Baron*, supra, 94 F.3d 1314–15, 1320; *United States* v. *Smith*, supra, 679 F. Sup. 412–13. In this case, the change in location does not lead to the conclusion that the defendant's wavier was not voluntary at the time he gave his statement within the context of this case.

On the basis of the foregoing analysis, we conclude that, considering the totality of the circumstances, the defendant both understood his *Miranda* rights against self-incrimination and, subsequently, made a knowing and intelligent waiver of those rights.

II

The defendant next claims that that the court improperly instructed the jury in that the instruction violated his constitutional right to a fair trial by an impartial jury when the court directed the jury to consider the state's good faith basis for prosecuting him. Specifically, the defendant argues that the court's instruction bolstered the credibility of the state and the individual prosecutor, injected into the trial the element of the state's good faith and diluted the presumption of innocence constitutionally guaranteed to criminal defendants. We disagree.

The defendant seeks review of his claim under *State v. Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[2] "We review the claim under *Golding* because the record is adequate for our review, and a claim that challenges the propriety of jury instructions on the law of reasonable doubt is of constitutional magnitude." *State v. Dubose*, 75 Conn. App. 163, 168, 815 A.2d 213, cert. denied, 263 Conn. 909, 819 A.2d 841 (2003).

The standard of review for constitutional claims of improper jury instructions is well settled. "Where . . . the challenged jury instructions involve a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict. . . . In evaluating the particular charges at issue, we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view [them] as improper." (Internal quotation marks omitted.) *State v. Ortiz*, 79 Conn. App. 667, 674, 830 A.2d 802, cert. denied, 266 Conn. 933, 837 A.2d 806 (2003).

[2] In *State v. Golding*, supra, 213 Conn. 233, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." Id., 239–40.

The court included in its charge the statement that "[t]he state does not desire a conviction of an innocent person or any person whose guilt upon the evidence is in the realm of reasonable doubt. The state has as much concern in having an innocent person acquitted as in having a guilty person punished . . . ." The defendant cites *State* v. *Schiappa*, 248 Conn. 132, 728 A.2d 466 (en banc), cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999), and *State* v. *Wilson*, 71 Conn. App. 110, 800 A.2d 653, cert. denied, 262 Conn. 905, 810 A.2d 272 (2002), in contending that the court's instruction was improper because it weakened the constitutional presumption of innocence afforded to criminal defendants and impaired his right to a fair trial. We are not persuaded.

Both this court and our Supreme Court have been critical of the instruction at issue in this case and have counseled trial courts against its use. See *State* v. *Schiappa*, supra, 248 Conn. 175; *State* v. *Wilson*, supra, 71 Conn. App. 119. "Because the guilty as well as the innocent are entitled to the protections afforded by the presumption of innocence and the reasonable doubt standard, the challenged portion of the charge, when viewed in isolation, gives rise to a danger of juror misunderstanding. . . . Accordingly, in the exercise of our supervisory authority over the administration of justice, we direct our trial courts to refrain from the use of that language in the future." *State* v. *Schiappa*, supra, 175. Nevertheless, our Supreme Court concluded that "the trial court's charge, *when viewed in its entirety,* adequately apprised the jury that the defendant was entitled to a presumption of innocence unless and until the state proved her guilty beyond a reasonable doubt." (Emphasis added.) Id., 173; see also *State* v. *Watson*, 251 Conn. 220, 228, 740 A.2d 832 (1999); *State* v. *Wilson*, supra, 119–20; *State* v. *Allen*, 28 Conn. App. 81, 84–85,

611 A.2d 886, cert. denied, 223 Conn. 920, 614 A.2d 826 (1992).

The court apprised the jury of the presumption of innocence and the state's burden of establishing guilt beyond a reasonable doubt. The court repeatedly reminded the jury throughout its charge that the burden of proof applicable to criminal cases is guilt beyond a reasonable doubt. Additionally, the challenged portion of the charge was followed directly by an instruction that again emphasized the presumption of innocence to which a defendant is entitled.[3]

On the basis of the foregoing analysis, we conclude that the court's charge, when viewed in its entirety, adequately explained to the jury that the defendant was entitled to a presumption of innocence unless and until the state proved his guilt beyond a reasonable doubt and that the charge fairly presented the case to the jury so that no injustice would result. Accordingly, the defendant's claim must fail under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] The court stated in relevant part: "It is the sworn duty of the court and the jurors to safeguard the rights of persons charged with crimes by respecting the presumption of innocence [and] by making the state meet its burden of proof of guilt beyond a reasonable doubt. The law is made to protect society and persons whose . . . guilt has not been established beyond a reasonable doubt and not to protect those whose guilt has been established by a reasonable doubt. If the presumption of innocence has been overcome by evidence proving beyond a reasonable doubt that an accused is guilty of the crime or crimes charged, then it is the sworn duty of the jury to enforce the law and render such verdicts. Of course, if the state has not met its burden of proof as to any one or more of the charges in the information, then [it has] failed in [its] obligation and [its] burden . . . and you must find the defendant not guilty of any one or more of those charges."